STATE EX REL. O'CONNOR, RESPONDENT, *v.* McCARTHY, CITY TREASURER, APPELLANT.

(No. 6,496.)

(Submitted October 2, 1929. Decided November 13, 1929.)

[282 Pac. 1045.]

*Messrs. Maury, Brown & Maury,* for Appellant, submitted a brief; *Mr. R. Lewis Brown* argued the cause orally.

*Mr. Clarence Hanley,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

On motion of the relator, F. J. O'Connor, the district court of Silver Bow county rendered judgment on the pleadings in a proceeding for writ of mandate, granting a peremptory writ commanding Thomas J. McCarthy, as treasurer of the city of Butte, to pay out of the general fund of the city the amounts called for by twelve city warrants issued to relator for a year's salary as assistant city treasurer. In addition to the writ the court adjudged that "relator do have and recover of and from the respondent, Thomas J. McCarthy, the sum of \* \* \* $337.57 \* \* \* as damages, \* \* \* being \* \* \* $250 attorneys' fees and \* \* \* $87.50 \* \* \* for damages and loss of interest," with costs taxed

at $10, but thereupon declared: "It appearing to the court from all of the proceedings had before it and the issues therein adjudicated that the respondent appeared in said proceeding in his official capacity * * * and in that capacity represented the city, and it is here further determined that he appeared and made the defense in good faith; and that the relator * * * may present his claim to the city * * * for said total of $337.57 damages, together with his costs * * * as a proper claim against it and when allowed the same shall be paid as other claims against said city."

Defendant challenged that portion of the judgment dealing with costs and damages by motion to strike and motion to "retax costs," which motions being denied, he appealed from the judgment.

Herein defendant makes no complaint concerning the issuance of the writ and has abandoned his appeal as to that portion of the judgment, but asserts that the court erred in entering a money judgment against him and in overruling his motions to strike such matter from the judgment and to "retax" the costs. His contention is that, as the court found that he represented the city and acted in good faith, the only judgment as to damages and costs which could have been entered was one against the city. Relator has made a cross-assignment of error upon which he contends that the court's findings in this regard are not based upon or supported by facts before the court and, therefore, that portion of the judgment requiring presentation to the city must be stricken from the judgment. As the trial court determined the matter solely upon the pleadings, and we have them before us, we are in a position to declare whether or not the judgment is warranted by the showing made.

The general rule is that public officers are personally liable for the costs incurred in mandamus proceedings to compel them to perform duties which they are required by law to perform. (38 C. J. 954.)

Prior to 1925 our general statutory provision, applying in all cases wherein an officer prosecuted or defended "on behalf

of the state or county, or any subdivision thereof,'' declared that he should not be taxed with costs or assessed damages, but that these should be ''taxed to the state or county, as the case may be'' (sec. 9810, Rev. Codes 1921), while, with reference to mandamus proceedings, it was merely declared that, ''if judgment be given for the applicant, he may recover the damages which he has sustained, * * * together with the costs'' (sec. 9858, Id.).

As illustrative of when, and when not, section 9810 applies in favor of a public officer, it is held in *Griggs* v. *Glass,* 58 Mont. 476, 193 Pac. 564, that, where the attorney general brought action in the name of the state, seeking to oust a county official for alleged misconduct in office, the action was on behalf of the public affected, i. e., the county, ''to the end that we may have faithful public officers,'' and therefore, on losing the case, neither the relator nor the state should be cast in costs, but that they were proper charges against the county. But where action was brought against a city, its mayor, treasurer and clerk to compel issuance of salary warrants to relator, and the officers defended on the ground that relator did not possess the necessary qualifications to hold his office, it was held that no cause of action was stated against the city or the treasurer, as neither was chargeable with the duty to issue warrants, and that ''the record is barren of any showing'' that the other officers, in defending as they did, were acting on behalf of the city. Mr. Chief Justice Callaway, speaking for the court, declared that, ''so far as the record discloses, they were acting upon their own initiative in doing what they did.'' (*State ex rel. Shea* v. *Cocking,* 66 Mont. 169, 28 A. L. R. 772, 213 Pac. 594, 597.) In the latter case the court called attention to the fact that section 9810, above, did not ''in terms'' include municipal officers in its exemption, and suggested that the section might well be amended to conform to the California statute on the subject. This suggestion was promptly acted upon by the legislature, section 9810 being amended to include municipal officers and municipalities in its provisions (Chap. 9, Laws of 1925), and

section 9858, above, was thereupon amended, by adding thereto the following proviso, added by California to its like statute in 1913:

"Provided, however, that in all cases where the respondent is a state, county or municipal officer all damages and costs, or either, which may be recovered or awarded shall be recovered and awarded against the state, county or municipal corporation represented by such officer, and not against such officer so appearing in said proceeding and the same shall be a proper claim against the state or county or municipal corporation for which such officer shall have appeared, and shall be paid as other claims against the state, county or municipality are paid; but in all such cases, the court shall first determine that the officer appeared and made defense in such proceeding in good faith." (Chap. 5, Laws of 1925.)

It is suggested that there exists a conflict between the two sections, as amended, as section 9858 now requires a finding of good faith, while section 9810 does not. There is no difficulty here, however, since the former is a special statute applying only in mandamus proceedings, while the latter applies generally to all forms of actions other than such proceedings, under the well-known rule of construction announced in *State ex rel. Daly* v. *Dryburgh, Mayor,* 62 Mont. 36, 203 Pac. 508.

Aside from the provision with reference to "good faith," the two sections, as amended, differ, in that section 9810, as amended, exempts officers from liability when they appear "on behalf of" the state, county or municipality, while 9858, as amended, declares that the damages and costs shall be awarded against the body "represented" by the officer so appearing; but, when used in connection with a court action, the two mean the same thing—to "represent" another in court means to conduct and control the proceeding "on behalf of" that other (*Carpenter* v. *Superior Court,* 75 Cal. 596, 19 Pac. 174); to stand in the place of and act for the one represented (*Plummer* v. *Brown,* 64 Cal. 429, 1 Pac. 703; *Chase* v. *Swayne,* 88 Tex. 218, 53 Am. St. Rep. 742, 30 S. W. 1049).

The relator's affidavit for the writ, which is his complaint herein, bases a "count" upon each of the twelve city warrants on which payment was refused by the defendant treasurer. Each count alleges that the relator is the owner and holder of the warrant therein described and set out in full, which warrant "was duly and regularly executed, drawn upon the treasurer * * * pursuant to the direction of the city council, * * * signed by the mayor * * * and countersigned by the city clerk, * * * bearing the corporate seal" and made payable to relator and out of the general fund of the city. Each warrant recites that it is for salary "Asst. City Treasurer." Each count then alleges the duty of the treasurer to pay warrants so issued, when presented to him for payment, if in funds, otherwise to register them for want of funds, and alleges presentation and wilful and arbitrary refusal of the treasurer to either pay or register the warrant at the time of presentation.

Answering each of the counts, defendant admits his official capacity, and that he is in charge of the city money; denies that he has information on which to form a belief as to the allegations that the warrant was issued in the manner alleged, but admits "the form of the warrant as set out." He admits that he refused to pay or register each of the warrants; and alleges that he did so "because of the fact that said warrant alleged was not in fact and in truth any valid or legal obligation against the city of Butte, or such instrument as your defendant was required by law to pay"; denies that he acted wilfully or arbitrarily; and alleges that he refused "in good faith" and to prevent the public moneys under his charge from being unlawfully diverted.

Having answered each of the twelve counts, defendant interposed a special defense, setting up the ordinance of the city establishing a budget system showing the budgeting of his office and the amount appropriated for the conduct of his office, including the amount for the payment of his salary and that of his deputies. He alleges that thereafter he, as city treasurer, employed such deputies as were necessary to do the

work and without whose help he could not have conducted the affairs of the office, and who did the work, and for whose salary on the first of each month warrants were drawn against the salary fund, which he held as a trust fund for such payment and no other.

He further alleges that relator "had never been directed, instructed or employed by the respondent [defendant] as such city treasurer or at all, as a deputy treasurer of the city," and had never performed any services whatsoever in the office of the city treasurer, as deputy or otherwise.

He then alleges that he refused payment for the further reason that the city council had never made an appropriation for the payment "of such money," and for the further reason that, had defendant paid the warrants, the amounts paid would have been charged against the sum of $5,400 appropriated for the payment of salaries of deputies and the sum of $3,000 appropriated for the payment of his own salary, and such payments would have exhausted the fund before the end of the fiscal year, and, in such event, the city council would refuse to allow the salary claims of himself and his deputies who did the work in the office, and that the request for appropriation under the budget system did not include money for the payment of a salary to relator.

It is next alleged that, although he refused to pay the warrants, he nevertheless charged the amounts each month against the special fund appropriated for salaries, and by reason thereof the auditor reported to the council in May, 1928, that the salary fund for the fiscal year ending June 30, 1928, was exhausted, and therefore the auditor and council refused and still refuse, to pass upon claims of defendant and his deputies for salary for the month of June, 1928.

The affirmative matter in the answer was denied by reply.

As the propriety of issuing the writ is not questioned, we are interested in the issues joined only in so far as they show defendant's reasons for his refusal, but if the defendant, as city treasurer, had authority to determine the legality of the claims, audited and approved by the council, and for which

the warrants were issued, and to refuse to pay the warrants if in his judgment the claims were illegal, the writ should not have issued, since the writ lies only to compel the doing of a ministerial act about which there is no discretion in the officer refusing to do his duty.

When, therefore, in passing on the motion for judgment on the pleadings, the trial court declared the answer of the defendant to be "insufficient to constitute a defense," it, in effect, declared, as a matter of law, that the defendant, as city treasurer, had no discretion in the matter, but was in duty bound either to pay or register the warrants, on his own showing.

What, then, is the statutory requirement in this regard, the officer being, as stated in the *Farrell Case,* below, "governed solely by the Code?"

Section 5079, Revised Codes of 1921, provides that "all accounts and demands against a city or town must be submitted to the council, and if found correct, must be allowed and an order made that the demand be paid, upon which the mayor must draw a warrant upon the treasurer in favor of the owner, specifying for what purpose and by what authority it is issued, and out of what funds it is to be paid, and the treasurer must pay the same out of the proper fund." If the fund on which the warrant is drawn is exhausted, the treasurer "must indorse thereon 'Not paid for want of funds,' annexing the date of presentation, and sign his name thereto." (Sec. 5081, Id.)

Throughout these sections, it will be noted in each reference to an act, with the exception of the finding as to the correctness of the claim presented to the council, the legislature used the verb "must," which denotes "obligation," as, "we must obey the laws" (Webster), and, when used to impose a duty, it is mandatory and peremptory, excludes discretion, and imposes upon the officer an "absolute duty to perform the requirements of the statute in which it is employed." (*People* v. *Thomas,* 32 Misc. Rep. 170, 66 N. Y. Supp. 191, 193; *In re Farrell,* 36 Mont. 254, 92 Pac. 785, 787; *Ex parte Smith,* 152

Cal. 566, 93 Pac. 191; *Reinert Bros. Const. Co.* v. *Tootle,* 200 Mo. App. 284, 206 S. W. 422.)

In the *Farrell Case,* Mr. Chief Justice Brantly, speaking for the court, said: "It may be laid down as a general principle, that the limit of the power of a public officer is the statute conferring the power, and what further power is necessarily implied in order to effectuate that which is expressly conferred. In the performance of ministerial duties expressly enjoined, however, when the mode of performance is prescribed, no further power is implied, nor has the officer any discretion."

A city warrant is a command of the council, whose duty it is to pass upon the validity and determine the amount of the claim presented to the council and represented by the warrant, to the treasurer to pay the amount found due out of the fund designated to the designated person, and is notice to the treasurer that the claim has been duly adjusted and allowed. (2 Dillon on Municipal Corporations, 5th ed., 1283.)

Under the statute above, and under the law generally, it is the imperative duty of the treasurer to pay, or register, any warrant presented which meets the requirements of the statute (*Bush* v. *Geisey,* 16 Or. 355, 19 Pac. 123), and, "when a warrant is presented for payment, it is no part of the duty of the treasurer to inquire into the legality of the consideration for which it was given" (6 McQuillin on Municipal Corporations, 2d ed., 89). "The treasurer is not obliged to overrule the city council or other officer issuing the warrant" (2 Dillon on Municipal Corporations, 1311), nor is he permitted to "withhold payment upon the ground that the amount claimed is not due according to his construction of the law" (High on Extraordinary Legal Remedies, 3d ed., sec. 212).

It is, of course, the duty of the treasurer, when a warrant is presented for payment, to ascertain whether or not there has been an appropriation for the *fund* on which the warrant is drawn, and, if there has been, whether or not the fund is exhausted, and, if he finds that, for either cause, there are no funds with which to pay, it is his duty to not pay the

warrant, and it is consequently held that such facts constitute a good defense to a mandamus proceeding. (See note II, 5 A. L. R., page 579, citing among other cases, *State ex rel. Donovan* v. *Barret,* 30 Mont. 203, 81 Pac. 349, 350.) But this rule goes to the merits of the controversy, which are not before us, and does not justify the assumption that the treasurer had discretion to determine whether or not a warrant drawn on a fund under his care is a proper charge against the fund. The above holdings are justified on the ground that one seeking a writ of mandate must establish a clear legal right to the writ in himself to the relief prayed for and a violation of a duty by the officer sought to be coerced. (*State ex rel. Cutts* v. *Hart,* 56 Mont. 571, 7 A. L. R. 1678, 185 Pac. 769.) In such an action, if it clearly appears that the relator had no just claim upon the money called for by the warrant, the court would be justified in denying the writ, which is always discretionary and to be allowed only "in furtherance of justice upon a proper case presented" (*State ex rel. Donovan* v. *Barret,* above); but such denial is not based upon the right of the treasurer, in the first instance, to refuse to pay the warrant (*State ex rel. Danaher* v. *Miller,* 52 Mont. 562, 160 Pac. 513).

Here the showing is that money was appropriated for the payment of salaries of deputies treasurer. That appropriation was not made to pay the salaries of any particular individuals, but to pay those persons legally entitled to payment. True, the treasurer alleges that he did not appoint relator, and that relator did not work in the office, but the determination as to whether relator was legally appointed rested in the council, not the treasurer, and, as the answer does not set out any ordinance showing in what manner such deputies are to be appointed, the trial court was in no position to say that relator was not legally appointed (*Dineen* v. *City of Butte,* 83 Mont. 370, 272 Pac. 243), and, on this appeal, we are not called upon to determine the matter. As to the allegation that relator did not work in the office, that fact alone would not deprive him of the right to receive payment of

salary, as an officer illegally ousted from office is yet entitled to recover.

With the exception of the last month or so of the fiscal year, the showing is that money was on hand for the payment of all salary warrants presented for payment.

In *Ellis, Treasurer,* v. *Moses,* 76 Colo. 214, 230 Pac. 802, it is held that, on mandamus to compel registration of warrants drawn by persons "pretending to be officers of irrigation district," the warrants are presumed to be valid, but the county treasurer is not precluded, because a ministerial officer, from showing the warrants invalid in fact, and that an order requiring registration was erroneous when, on the same day, the same court held that the board of directors who drew the warrants constituted an illegal body. On such a showing made, on appeal, the supreme court of Colorado declared that the treasurer was justified in his initial refusal to pay or register the warrants. While we may agree that the trial court, having shown that the warrants were illegally issued, should have exercised its discretion in denying the writ, and that the supreme court was justified in reversing the judgment as an abuse of discretion, we cannot agree with the conclusion that, because this fact was ultimately established, a layman treasurer was thereby justified in his initial refusal. Such a holding would vest discretion in a treasurer to refuse to pay any warrant which, in his judgment, was issued for an illegal consideration or by an illegally constituted body, and thus render his ministerial office an appellate tribunal for the review of discretionary acts of the body duly constituted and vested with power to determine those matters. With our statutory provisions in mind, we cannot subscribe to any such doctrine.

We are not called upon to now determine what procedure should be adopted to prevent the payment of a warrant illegally issued, but, clearly, under such statutes, appeal to the judgment of the treasurer is not a prescribed procedure, and, what that officer cannot do on application of another, he cannot do on his own initiative. Where, as here, an officer is

required by law to act on a given state of facts in a prescribed manner, without regard to the exercise of his own judgment upon the propriety of the act, such act, or the officer's duty to perform it, is merely ministerial (*State ex rel. Lloyd* v. *Rotwitt*, 15 Mont. 29, 37 Pac. 845; *Bair* v. *Struck*, 29 Mont. 45, 63 L. R. A. 481, 74 Pac. 69), and this is none the less so because the officer may be required to satisfy himself that the state of facts, under which he is required to act, exists (*Stephens* v. *Jones*, 24 S. D. 97, 123 N. W. 705; *State ex rel. Lockwood* v. *Tyler*, 64 Mont. 124, 208 Pac. 1081).

Herein the only facts to be determined by the treasurer before he "must pay" a warrant, as commanded in section 5079, above, are that the warrant, on its face, shows that it was regularly drawn in the manner prescribed in the section, to the person presenting it, since, in the discharge of a ministerial duty, an officer must be governed solely by the Code provisions imposing the duty upon him. (*In re Farrell,* above.)

Under these well-established rules, how can it be said that a city treasurer is representing, or acting on behalf of, the city when he presumes to overrule the city council and the mayor in allowing claims against the city and issuing warrants therefor? Had the city, the council, the mayor, and clerk been made parties to an action to compel payment of such warrants, none would have defended, for what is sought to be compelled is but what they have commanded the treasurer to do. The city is in nowise to blame for the situation giving rise to the incurring of damages and costs in this proceeding, and should, therefore, not be required to pay them. The defendant was, in fact, opposing, not representing, the city. He acted "on his own initiative" in doing what he did. (See *State ex rel. Shea* v. *Cocking,* above.)

The court's finding that in this proceeding the defendant appeared in his official capacity, and in that capacity "represented the city" and acted "in good faith," is not, under the above rules, justified by the record presented and cannot stand.

However, specification of error numbered 2 raises the question as to whether or not interest on the warrants in question may be recovered in this proceeding as "damages." The "damages" contemplated in section 9858, above, are only "such as are incidental to the proceedings themselves, and are not those which have arisen out of the prior preclusion or deprivation which the writ itself was invoked in part to redress." (*State ex rel. Barry* v. *O'Leary*, 83 Mont. 445, 272 Pac. 677, and cases cited.)

This is not an action to recover the amount due on the warrants, but a proceeding to compel a city official to perform his duty wherein the statute permits recovery of costs and damages incurred in compelling performance. The damages recoverable include an attorney's fee in the action, but interest on the warrants, if due from the time the treasurer refused to pay or register the warrants, is an item arising out of the wrongful act of the treasurer and not an incident to the mandamus proceeding, and, if recoverable, must be the subject of a claim presented to the city and handled in the usual course. (*State ex rel. Golden Valley County* v. *District Court*, 75 Mont. 122, 242 Pac. 421.)

The cause is remanded to the district court of Silver Bow county, with direction to modify its judgment herein by striking from the judgment for damages and costs the item of $87.50, interest on warrants, and striking the entire final paragraph from the judgment, and, as modified, the judgment shall stand affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, FORD and ANGSTMAN concur.